# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROY MILLS,

      Plaintiff,

v.                                                 No. CV 16-573 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Roy Mills' *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 17), filed January 11, 2017; Defendant Commissioner Nancy A. Berryhill's *Response to Plaintiff's Motion to Reverse and Remand the Administrative Decision* (the "Response"), (Doc. 21), filed April 5, 2017; and Mr. Mills' *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing With Supportive Memorandum* (the "Reply"), (Doc. 22), filed May 1, 2017.

Mr. Mills filed applications for supplemental security income and disability insurance benefits on April 23, 2012, alleging disability beginning August 2, 2011. (Administrative Record "AR" 16). Mr. Mills claimed he was limited in his ability to work due to major depressive disorder, generalized anxiety disorders, disassociated amnesia, intermittent explosive disorder, drug abuse, and a compressed disc in his back. (AR 185). Mr. Mills' applications were denied initially on December 11, 2012, and upon reconsideration on June 17, 2013. (AR 16). Mr. Mills requested a hearing before

an Administrative Law Judge ("ALJ"), which was held on November 5, 2014, before ALJ

Ann Farris. (AR 864). Mr. Mills and Pamela Bowman, an impartial vocational expert

("VE"), testified at the hearing, and Michael Armstrong, an attorney, represented Mr.

Mills at the hearing. (AR 864-93).

On July 17, 2015, ALJ Farris issued her decision, finding Mr. Mills not disabled at

any time between his alleged disability onset date through the date of the decision. (AR

29). Mr. Mills requested review by the Appeals Council, (AR 12), which was denied, (AR

7-9), making the ALJ's decision the Commissioner's final decision for purposes of this

appeal.

Mr. Mills now argues that the ALJ erred in considering and weighing the opinions

of Psychiatric Mental Health Nurse Practitioner ("PMHNP") Jayanna Warwick and non-

examining State Agency psychologist Carol Mohney, Ph.D. (Doc. 17 at 14-19). The

Court has reviewed the Motion, the Response, the Reply, and the relevant law.

Additionally, the Court has meticulously reviewed the administrative record. Because

the ALJ erred in her consideration and weighing of Ms. Warwick's and Dr. Mohney's

opinions, the Court finds that Plaintiff's motion should be **GRANTED**.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). If substantial evidence supports the Commissioner's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is not

entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.      Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.    Background

Mr. Mills applied for supplemental security income and disability insurance benefits due to major depressive disorder, generalized anxiety disorders, disassociated amnesia, intermittent explosive disorder, drug abuse, and a compressed disc in his back. (AR 185). At step one, the ALJ determined that Mr. Mills had not engaged in substantial gainful activity since August 2, 2011, the alleged onset date. (AR 19). At step two, the ALJ concluded that Mr. Mills was severely impaired by: depression; anxiety; somatoform disorder, not otherwise specified; dependent avoidant personality disorder; borderline intellectual functioning; and impulse control disorder. (AR 19-21). At step three, the ALJ determined that none of Mr. Mills' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 21-23).

At step four, the ALJ found that Mr. Mills has the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: "he is limited to work with short and simple instructions and only occasional and superficial interaction with the general public and co-workers." (AR 23). In formulating Mr. Mills' RFC, the ALJ stated that she considered Mr. Mills' mental and physical health history, Mr. Mills' subjective complaints of his symptoms, and the medical evidence in the record. (AR 23-27).

In considering the medical opinion evidence, the ALJ first noted that Mr. Mills underwent a psychosocial assessment in July 2012 by Licensed Professional Clinical Counselor Annette Kerr, who diagnosed him with major depressive disorder, generalized anxiety disorder, dissociated amnesia, intermittent explosive disorder, and

cannabis abuse, and assigned him a Global Assessment of Functioning ("GAF") score of 40. (AR 24). The ALJ next considered the consultative psychiatric examination performed by Dr. Paula Hughson in December 2012. *Id.* Dr. Hughson diagnosed Mr. Mills with dysthymic disorder, somatoform disorder, and dependent avoidant personality disorder with a rule out for narcolepsy, and she assigned Mr. Mills a GAF score of 52. *Id.* The ALJ stated that she gave Dr. Hughson's opinion great weight because it is consistent with Dr. Hughson's interview and testing of Mr. Mills. *Id.* The ALJ noted that Amy Bissada, DO, performed an initial adult psychiatric diagnostic interview with Mr. Mills in November 2013, and that she diagnosed him with major depressive disorder and intermittent explosive disorder, and assigned him a GAF score of 49. *Id.* The ALJ stated that "GAF scores are subjective clinical impressions of the claimant's *overall* functioning with dubious applicability to the claimant's *social* and *occupational* functioning," and that a GAF score "applies only to the time when it was rendered." (AR 25) (emphasis in original). The ALJ stated that, therefore, she gives "little weight to these GAF scores and find[s] that they do not representative [sic] of the claimant's long term functioning." *Id.*

Next, the ALJ considered the October 2014 opinions of Ms. Warwick, who found that Mr. Mills has marked limitations with respect to understanding, memory, and his ability to accept instructions and respond appropriately to criticism from supervisors, and that he has slight to moderate limitations with respect to sustained concentration and persistence, adaptation, and social interactions. (AR 25). Ms. Warwick also found that Mr. Mills has symptoms that would meet Listing 12.06. *Id.* The ALJ stated that she gave Ms. Warwick's opinions little weight because they are not consistent with Ms.

Warwick's treatment notes, she is not an acceptable medical source, and she has not observed Mr. Mills in a work setting. (AR 25-26).

The ALJ then considered the February 2015 opinions of Thomas Dhanens, Ph.D., who performed a psychological evaluation and diagnosed Mr. Mills with borderline intelligence, impulse control disorder, and ruled out neurasthenia and post-traumatic stress disorder. (AR 26). The ALJ stated that he gave these opinions great weight because they are consistent with Dr. Dhanens' interview and testing of Mr. Mills, and with Mr. Mills' "transcripts and interactions with other clinicians." *Id.*

In addition, the ALJ evaluated the December 2012 opinions of State Agency psychological consultant Carol Mohney, Ph.D., who found that Mr. Mills could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. *Id.* The ALJ noted that in June 2013 State Agency psychological consultant Howard Atkins, Ph.D., reviewed and affirmed Dr. Mohney's opinions. *Id.* The ALJ stated that she gave their opinions "moderate weight as they are experienced at reviewing records and assigning mental health restrictions," but that "more recent evidence dose [sic] support a finding that the claimant would to [sic] better with less interaction with the public and co-workers." *Id.*

Next, the ALJ stated that she found that Mr. Mills' statements as to the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (AR 26). In support of this finding, the ALJ explained that Mr. Mills' "allegation that he is unable to work due to problems working with others is inconsistent with his ability to work at Dairy

Queen as a cashier in the past." *Id.* The ALJ further relied on the following evidence: that Mr. Mills was able to use public transportation by himself; was able to "shoot darts;" that Mr. Mills' condition is improved when he takes his medications; that he did not always follow mental health treatment recommendations; that he may have more responsibilities with respect to his wife and mother-in-law than alleged; and that he "was able to navigate the complicated treatment plan of requiring outpatient daily IV antibiotics and securing public transportation to these appointments." (AR 26-27).

The ALJ also considered a statement submitted by Mr. Mills' mother-in-law, in which she stated he had been in special education, that she helped him with job applications, and that he could not be employed at any job due to his emotional issues, suppressed immune system, back problems, and sleep apnea. (AR 27). The ALJ found that, because Mr. Mills' mother-in-law is not medically trained, "the accuracy of the statement is questionable." *Id.* The ALJ further noted that she is not a disinterested third party, and that her statement "is not consistent with the preponderance of the opinions and observations by medical doctors in this case." *Id.*

Finally, the ALJ stated that she "limited [Mr. Mills] to work with little interaction with co-workers and the public due to his moderate limitations with respect to social functioning," and that she "also limited him to simple work due to his moderate limitations with respect to concentration, persistence, and pace." *Id.* The ALJ further stated that "Dr. Dhanens confirmed that [Mr. Mills] was not intellectually disabled, and multiple treatment notes document normal memory and attention and concentration," and that "[t]he record does not document any long term physical limitations." *Id.* The

ALJ then explained that Mr. Mills is unable to perform any of his past relevant work, so the ALJ proceeded to step five. *Id.*

At step five, the ALJ noted that Mr. Mills was 23 years old on the alleged disability onset date, and therefore classified as a "younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Mr. Mills has at least a high school education and is able to communicate in English. (AR 28). The ALJ noted that the VE testified at the hearing that an individual with Mr. Mills' same age, education, work experience, and RFC could perform the jobs of laborer/polisher, industrial cleaner, and hand cleaner/polisher. *Id.* The VE stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony and concluded that, because Mr. Mills is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 28-29).

### IV. Analysis

Mr. Mills argues that the ALJ erred in considering and weighing the opinions of Ms. Warwick and Dr. Mohney. (Doc. 17 at 14-19). The Commissioner responds that the ALJ properly considered these medical opinions. (Doc. 21 at 9-15). The Commissioner argues that the ALJ provided good reasons for discounting Ms. Warwick's opinions and that Mr. Mills' challenge to the ALJ's consideration of her opinions invites the Court to reweigh the evidence, which it cannot do. *Id.* at 9-11. The Commissioner further contends that the ALJ properly considered Dr. Mohney's opinions because Dr. Mohney's findings of moderate and marked limitations in Section I of the Mental RFC

("MRFC") form were accounted for in his Section III narrative conclusions, and because the ALJ's RFC determination is consistent with Dr. Mohney's narrative conclusions. *Id.*

Social Security Regulations require ALJs to evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Further, the Commissioner may not rationalize the ALJ's decision post

hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision."

*Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

A. <u>The ALJ's Consideration of Ms. Warwick's Opinions</u>

Mr. Mills attended psychotherapy sessions with Ms. Warwick from August 27, 2014 to October 20, 2014. (Doc. 17 at 8); (AR 766-72). Mr. Mills contends that the ALJ erred by failing to provide adequate reasons for rejecting Ms. Warwick's opinions. (Doc. 17 at 15-16). Specifically, Mr. Mills contends that the ALJ failed to cite the evidence upon which she relied for her statement that Ms. Warwick's assessment is not consistent with her treatment notes. *Id.* at 16. Mr. Mills also challenges the ALJ's statement that Ms. Warwick's opinions should be rejected because Ms. Warwick has not observed Mr. Mills in a work setting. *Id.* at 17. Mr. Mills contends that this reason is inadequate because it "would preclude <u>every</u> opinion from <u>every</u> source that the ALJ relies on in making her decision," and "would also call into question the ALJ's RFC, as she has also not 'observed the claimant in a work setting.'" *Id.* (emphasis in original) (quoting AR 26). Finally, Mr. Mills contends that the ALJ would have made a more restrictive RFC determination had she properly incorporated the limitations identified by Ms. Warwick. *Id.*

Ms. Warwick performed a Medical Assessment of Ability to Do Work-Related Activities (Mental) for Mr. Mills on October 15, 2014. (AR 774-75). In this assessment, Ms. Warwick found that Mr. Mills has marked difficulty in: remembering locations and work-like procedures; understanding and remembering detailed instructions; and accepting instructions and responding appropriately to criticism from supervisors. *Id.* Ms. Warwick also found that Mr. Mills has moderate difficulty in: understanding and

remembering very short and simple instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods of time (i.e. 2-hour segments); making simple work-related decisions; completing a normal workday and workweek without interruptions from psychological-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work place; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. *Id.*

The ALJ stated that she gave Ms. Warwick's opinions little weight because they are not consistent with her treatment notes, she is not an acceptable medical source, and she has not observed Mr. Mills in a work setting. (AR 25-26). In support of these reasons, the ALJ noted that Ms. Warwick's notes reflected that Mr. Mills' memory was intact and that he was alert and oriented at each of his three visits with Ms. Warwick, and that Ms. Warwick's "treatment notes do not provide any justification as to why [Mr. Mills] would have difficulty handling criticism from supervisors." *Id.*

Ms. Warwick is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5), which provide that "[a]cceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. Instead, Ms. Warwick is an "other" medical source, pursuant to 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because

'[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' . . . Further, 'only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (quoting SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006)).

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 06-03p clarifies that the factors used in weighing medical opinions of acceptable medical sources "set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *5). Adjudicators are instructed to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case." *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *6).

Given the treatment provided to Mr. Mills by Ms. Warwick, her opinions as to Mr. Mills' mental limitations should have been properly weighed against other medical opinions in the record. The ALJ also was required to adequately explain why she rejected Ms. Warwick's opinions as to Mr. Mills' limitations. It appears that the ALJ agreed with some of Ms. Warwick's opinions—such as her opinions that Mr. Mills has moderate limitations in his abilities to carry out detailed instructions and in interacting with co-workers—because the ALJ accounted for these limitations in her RFC determination. (AR 23). However, the ALJ states that she gave Ms. Warwick's opinions only little weight, without specifying which of her opinions the ALJ assigned this weight. The ALJ's decision, therefore, is not sufficiently specific with regard to the weight given to Ms. Warwick's opinions, and the Court is unable to meaningfully review the ALJ's findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted); *Lewis v. Berryhill*, No. 16-5061, 2017 WL 676502, at *2 (10th Cir. Feb. 21, 2017) (unpublished) (holding that the ALJ erred when he did not specify which parts of a doctor's opinion were inconsistent with other medical evidence, and finding this "lack of specificity [to be] confusing" in light of agreement on some issues between the ALJ and the doctor).

The Commissioner contends that the ALJ properly assigned Ms. Warwick's opinions little weight because Ms. Warwick had only treated Mr. Mills on three occasions, and "[a]s such, Ms. Warwick did not have a longitudinal picture of his mental functioning." (Doc. 21 at 9). This was not given by the ALJ as a reason for her rejection of Ms. Warwick's opinions, however, so this is an improper *post hoc* rationalization by the Commissioner. *See Carpenter*, 537 F.3d at 1267 ("Judicial review is limited to the reasons stated in the ALJ's decision."). Therefore, the Court may not adopt this reason in order to affirm the ALJ. *Id.*

The Commissioner also argues that the ALJ properly discounted Ms. Warwick's opinions because they are not supported by her own treatment notes. (Doc. 21 at 10). While the ALJ relied on Ms. Warwick's notes that Mr. Mills' memory was intact and that he was alert and oriented at his visits with her, the ALJ failed to note that Ms. Warwick's opinions regarding Mr. Mills' limitations are consistent with other, similar findings in the record. *See* AR 271, Dr. Hughson's findings of moderate limitations in carrying out instructions, working without supervision, and interacting with the public; AR 40-41, Dr. Mohney's findings of moderate limitations in working without supervision, making simple work-related decisions, interacting with the public and supervisors, and responding appropriately to changes in the workplace; AR 53-54, Dr. Atkins' findings of moderate limitations in maintaining attention and concentration for extended periods, working without supervision, making simple work-related decisions, interacting with the public and supervisors, and responding appropriately to changes in the workplace. The ALJ's failure to account for how she resolved these inconsistencies constitutes legal error. *See Kerwin*, 244 Fed. Appx. at 884; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir.

2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence.").

Finally, the Commissioner contends that the ALJ's decision to reject Ms. Warwick's opinions is supported by other evidence in the record. (Doc. 21 at 10-11). However, this was not cited by the ALJ as a reason for her rejection of Ms. Warwick's opinions, so this is another improper *post hoc* rationalization by the Commissioner. In addition, the Court finds no support for the ALJ's statement that she rejected Ms. Warwick's opinions, in part, because Ms. Warwick had not observed Mr. Mills in a work setting. The Court notes that the Commissioner did not address this issue in her response brief.

Based on the foregoing, the Court finds that the ALJ failed to give reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she assigned to Ms. Warwick's opinions, *Langley*, 373 F.3d at 1119 (citation omitted), and that the ALJ failed to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," SSR 96-8p, 1996 WL 374184, at *7. Therefore, the Court agrees with Mr. Mills that the ALJ's findings with regard to Ms. Warwick's opinions do not permit meaningful review and that the ALJ failed to follow proper legal standards.

B. *The ALJ's Consideration of Dr. Mohney's Opinions*

Next, Mr. Mills contends that the ALJ erred by failing to account for all of the limitations found by non-examining State Agency psychologist Dr. Mohney. (Doc. 17 at 17-19). Specifically, Mr. Mills contends that the ALJ failed to account for Dr. Mohney's

findings that Mr. Mills has limitations in his ability to sustain an ordinary routine without special supervision, and in accepting instructions and responding appropriately to criticism from supervisors. *Id.* at 18. Mr. Mills argues that "[h]ad ALJ Farris recognized and incorporated these limitations in her assessment, a more restrictive RFC would have resulted, precluding Mr. Mills from employment." *Id.* at 19.

In response, the Commissioner states that Dr. Mohney's findings of moderate limitations were made in the Section I worksheet portion of her assessment, which does not constitute an RFC assessment. (Doc. 21 at 12). Instead, the Commissioner argues that the Section III narrative conclusion is the actual RFC determination, and that the ALJ did not need to include the moderate limitations indicated in Section I because she relied on Dr. Mohney's Section III narrative conclusion. *Id.* The Commissioner states that the ALJ found that Mr. Mills was more limited in his ability to interact with others than Dr. Mohney found, and that the ALJ's RFC determination is consistent with Dr. Mohney's narrative conclusions. *Id.* at 13-14. In addition, the Commissioner contends that the ALJ found that Plaintiff could perform unskilled work, which involves working with things instead of data or people, that the ALJ "set forth a very restrictive mental [RFC] assessment," and that the ALJ "was not required to adopt *all* portions of [Dr. Mohney's] opinions verbatim." *Id.* (emphasis in original) (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir 2004)).

The Tenth Circuit has discussed the difference between Sections I and III of the MRFC Assessment in unpublished decisions. *See, e.g., Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015) (unpublished). In *Carver*, the claimant argued that the ALJ erred by failing to incorporate all of the Section I limitations in a non-examining State

Agency physician's MRFC Assessment. The Tenth Circuit explained that Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the Social Security Administration's Program Operations Manual System ("POMS"), which "provides that Section III of the MRFC, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III, and Section III should "explain the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at 619 (quoting POMS DI 24510.060 B.4.a. and B.4.b.). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224-25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11-cv-00333-WYD, 2012 WL 1044746, at *5-6 (D. Colo. Mar. 28, 2012) (unpublished)).

Applying these principles in *Carver*, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in his ability to accept instructions and respond appropriately

to supervisor criticism. *Id.* In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619-20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was "tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

In this case, Dr. Mohney conducted an MRFC Assessment on December 10, 2012. (AR 39-41). In Section I of the MRFC, Dr. Mohney found that Mr. Mills has moderate limitations in: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; making simple work-related decisions; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. (AR 40-41).[2] In Section III of the MRFC, Dr. Mohney explained several of these findings in narrative form. As to Mr. Mills' sustained concentration and persistence capacities, Dr. Mohney stated that Mr. Mills has

---

[2] While Mr. Mills states in his motion that Dr. Mohney found that he has "significant" limitations (Doc. 17 at 18), the record shows that Dr. Mohney, instead, found only moderate limitations (AR 40-41)

borderline intellectual capacity, and that he requires limits in working without any supervision and in making work-related decisions. (AR 40). For adaptation limitations, Dr. Mohney found that Mr. Mills "could respond to changes in [the] workplace slowly." (AR 41). Finally, Dr. Mohney found that Mr. Mills "can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.*

The ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 23). In her decision, the ALJ noted that, on June 12, 2013, State Agency psychological consultant Dr. Atkins affirmed Dr. Mohney's findings. (AR 26 and 51). The ALJ gave Dr. Mohney's and Dr. Atkins' opinions moderate weight, stating that "they are experienced at reviewing records and assigning mental health restrictions," but that "more recent evidence dose [sic] support a finding that [Mr. Mills] would to [sic] better with less interaction with the public and co-workers." (AR 26). The ALJ translated Dr. Mohney's findings into only two nonexertional limitations: working with short and simple instructions, and only occasional and superficial interaction with the general public and co-workers. (AR 23).

Dr. Mohney found in Section I that Mr. Mills has moderate limitations in his ability to sustain an ordinary routine without special supervision and in accepting instructions and responding appropriately to criticism from supervisors, and in Section III concluded that Mr. Mills "requires limits in working [without] any supervision." (AR 40-41). The ALJ's RFC determination, however, fails to account for these limitations. While Dr.

Mohney offered an additional explanation in her MRFC that Mr. Mills can "interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting" (AR 41), the ALJ fails to address whether this explanation accounts for Dr. Mohney's findings that Mr. Mills requires limits in working without supervision, and has moderate limitations in accepting instructions and responding appropriately to criticism from supervisors. Although the Commissioner is correct in stating that the ALJ does not have to adopt all of Dr. Mohney's findings, it is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Haga*, 482 F.3d at 1208. The ALJ stated that she placed moderate weight on Dr. Mohney's opinions, which included requiring limits in working without supervision and a routine work setting; however, these limitations are not reflected in the ALJ's RFC determination. Instead, the ALJ seems to have implicitly rejected those findings, and therefore inappropriately "'us[ed] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265 (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)). This selective application of Dr. Mohney's report without explanation is error, and requires a remand in order for the ALJ to explain the evidentiary basis for her RFC determination.

The Commissioner relies on *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), for her contention that the ALJ did not need to discuss Dr. Mohney's Section I findings because the ALJ relied on the Section III narrative. (Doc. 21 at 12, 14). In *Smith*, the Tenth Circuit held the ALJ's RFC adequately incorporated all of the claimant's functional limitations, and the Tenth Circuit did not base its holding on the

fact that the ALJ relied on Section III rather than Section I. 821 F.3d at 1269. Therefore, the Court finds that this case does not support the Commissioner's position. Moreover, a discrepancy between Sections I and III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, No. 15-6027, 631 Fed. Appx. 538, 541 (10th Cir. 2015) (unpublished).

The Commissioner also contends that the ALJ did not err because she found that Mr. Mills is capable of performing unskilled work, which primarily involves working with things rather than people. (Doc. 21 at 14) (citing 20 C.F.R. pt. 404. subpt. P, app. 2, §§ 201.00(i), 202.00(g)). A limitation to unskilled work does not necessarily address an individual's mental limitations. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). Unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions - which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo*, 682 F.3d at 1290 n.3 (quoting *Wayland v. Chater*, No. 95-7029, 76 F.3d 394, *2 (10th Cir. Feb. 7, 1996) (unpublished)). "[W]hile there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here." *Wayland*, 76 F.3d at *2. Dr. Mohney's findings regarding Mr. Mills' limitations could affect jobs that do not primarily involve working with people. Without sufficient analysis from the ALJ or the VE as to these limitations, however, the Court cannot say that limiting Mr. Mills to unskilled work would accommodate these limitations.

Based on the foregoing, the Court agrees with Mr. Mills that the ALJ failed to account for Dr. Mohney's findings that Mr. Mills has limitations in his ability to sustain an ordinary routine without special supervision, and in accepting instructions and responding appropriately to criticism from supervisors. On remand, the ALJ must either incorporate those limitations in her RFC determination, or properly explain why they are not included.

## V.    Conclusion

For the reasons stated above, the Court concludes that the ALJ failed to properly weigh the medical opinions of Ms. Warwick and Dr. Mohney. The Court directs the ALJ, on remand, to properly weigh all medical opinions in the record.

**IT IS THEREFORE ORDERED** that Mr. Mills' *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 17), is **GRANTED**, and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE